UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JUNE S.,[1]

Plaintiff,                  Case # 19-cv-01514-FPG

v.                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

On April 28, 2016, Plaintiff June S., protectively applied for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). Tr.[2] 89.  On June 22, 2016, Plaintiff applied for Supplemental Security Income under Title XVI of the Act.  Tr. 88.  The Social Security Administration (the "SSA") denied her claims and Plaintiff appeared at a hearing before Administrative Law Judge Theodore Kim on July 24, 2018. Tr. 29.  At the hearing, Plaintiff and vocational expert, Auvis Grizic, testified.  On October 3, 2018, the ALJ issued an unfavorable decision. Tr. 13-28.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA.  Tr. 1-3.  Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 14.  For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the ALJ's decision is REMANDED to the Commissioner for further administrative proceedings.

---

[1] In order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial in accordance with this Court's Standing Order issued November 18, 2020.

[2] "Tr." refers to the administrative record in this matter.  ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

## LEGAL STANDARD

### I.      District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.     Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of her age, education, and

work experience.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*,

168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step

one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 13,

2015, the alleged onset date.  Tr. 16.  At step two, the ALJ found that Plaintiff had the following

severe impairments: degenerative disc disease of the cervical spine with stenosis, disc herniation,

and radiculopathy; degenerative disc disease of the lumbar spine with radiculopathy and stenosis;

bilateral carpal tunnel status post right release; and obesity.  *Id.*  The ALJ also determined that

Plaintiff had the following non-severe impairments: hyperlipidemia, right ear otalgia,

temporomandibular joint, trochanteric bursitis, chronic pain syndrome, obstructive sleep apnea,

hyperglycemia, insomnia, and dermatitis.  *Id.*  In determining these impairments were non-severe,

the ALJ found that such conditions did not more than minimally limit the Plaintiff's ability to

engage in work activity.  *Id.*  Similarly, Plaintiff's depression and post-traumatic stress disorder

were deemed not to cause more than minimal limitations on Plaintiff's ability to perform work

activities.  *Id.*

At step three, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meet or medically equal the severity of one of the listed impairments.  Tr. 19.

The ALJ determined that Plaintiff maintained the RFC to perform light work, as defined in 20 CFR

404.1567(b) and 416.967 (b).  Tr. 20.  However, the ALJ found that Plaintiff has the following

exertional limitations: Plaintiff (1) must be allowed to stand up to five minutes after every 30

minutes of sitting and to sit down up to five minutes after every 30 minutes of standing; (2) can

frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities; (3) can occasionally push, pull, or operate foot controls with both lower extremities; (4) can occasionally kneel, crouch, stoop, balance, and crawl, and can occasionally climb stairs and ramps; (5) should never climb ladders, ropes and scaffolds; (6) can never be exposed to unprotected heights and moving mechanical parts; and (7) can tolerate occasional exposure to vibration. *Id.* In addition, the ALJ found that Plaintiff has the following non-exertional limitations: Plaintiff is able to (1) understand, carry-out, and remember simple instructions; (2) make simple work-related decisions; and (3) occasionally deal with changes in a routine work setting. *Id.* The ALJ determined Plaintiff would also be off task ten percent of the workday. *Id.*

In formulating the RFC, the ALJ applied "some weight" to the opinion of consultative examiner Rita Figueroa, M.D., who opined Plaintiff would have mild limitations in repetitive bending, lifting, and carrying, and moderate limitations in turning movements. Tr. 25. The ALJ indicated this opinion was consistent with Dr. Figueroa's own examination but noted that after the examination Plaintiff underwent additional surgery and therefore, would have additional limitations beyond those opined by Dr. Figueroa. *Id.* The ALJ applied "limited weight" to the opinion of Annette Hertzlin-Lockamyer LCSWR, who completed an employability assessment and opined that Plaintiff had no physical limitations. *Id.* The ALJ noted that Ms. Hertzlin-Lockamyer rendered this opinion prior to the disability onset date and outside the relevant time period. *Id.* Finally, the ALJ applied "some weight" to the opinion of Cheryl Kast, PAC, who opined that Plaintiff would be able to sit for 15 minutes and stand for 15 minutes, sitting for a total of three hours in a workday, and standing for a total of three hours in a workday. *Id.* Kast also opined that the Plaintiff would need to rest for two hours during a day, would be limited to occasionally lifting one to five pounds, "would be able to balance for 15 minutes, rarely stoop, and

4

would have difficulty with reaching, feeling, pushing, pulling, heights, moving machinery, and vibration." *Id.*  In support of the limited weight applied to this opinion, the ALJ noted that the records showed that Plaintiff's range of motion varied from being mildly limited at times, to being in a normal range at others.  Tr. 25-26.

At steps four and five, the ALJ concluded that there were jobs that existed in the national economy that Plaintiff could perform including, for example, routing clerk, marking clerk, or collator operator.  Tr. 27.  As such, the ALJ found that Plaintiff was not disabled.

## II.    Analysis

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence.  Specifically, Plaintiff asserts that the ALJ "did not offer any specific reasoning as to why he assigned the highly specific sit/stand pattern, ability to lift and carry light exertion weight or the 10% off task time."  ECF No. 11-1 at 19.  Because this Court agrees that the ALJ's RFC was not supported by substantial evidence in the record, specifically, insofar as there was no evidence to support the ALJ's determination that Plaintiff would be off task ten percent of the workday, remand is required.  Because the Court finds remand is required due to the ALJ's failure to support the off-task determination, it does not address Plaintiff's other arguments.

"Specific RFC assessments, like percentage of time off-task, must be based on evidence in the record, not on an 'ALJ's own surmise.'"  *Wouters v. Comm'r of Soc. Sec.*, No. 19-cv-610-FPG, 2020 WL 2213896, at *2 (W.D.N.Y. May 7, 2020) (quoting *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014) (summary order) (remanding where the ALJ "translated" medical evidence suggesting that the claimant would be off task "for ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour" because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if

he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday.")).

Although the ALJ discusses much of Plaintiff's medical history in ultimately determining the appropriate RFC, the ALJ's finding that Plaintiff would be off-task ten percent of the workday is not rooted in any particular medical evidence or opinion. Indeed, the ALJ does not, and seemingly cannot, point to any evidence in support of the finding, nor does the ALJ attempt to tie any evidence of record to this specific conclusion. *See Milliken v. Berryhill*, No. 1:16-CV-00297 EAW, 2017 WL 3208635, at *17 (W.D.N.Y. July 28, 2017) (case remanded where an ALJ determined that plaintiff would need half hour breaks over the course of an eight hour work day to complete tasks but failed to point to anything in the record to support the determination that such a duration would permit plaintiff to work). "Without some explanation from [the ALJ] as to the tether between [his] RFC and the . . . medical opinions or statements from plaintiff, the RFC appears to be based upon [his] lay analysis of plaintiff's limitations, which is not permitted and requires remand." *Jordan v. Berryhill*, No. 1:17-CV-00509 (JJM), 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018).

In response to Plaintiff's assertion that the off-task time is not supported by evidence in the record, the Commissioner points to Plaintiff's report that she had problems paying attention if she was in pain, and to a mental status examine which showed mild to moderate impairment in attention and concentration due, in part, to Plaintiff's physical pain. *See* ECF No. 14-1 at 17. While the ALJ mentions these symptoms in his discussion of the severity of Plaintiff's impairments, *see* Tr. 17-18, there is no indication that such opinions factored into the off task finding. In fact, the ALJ does not undertake any attempt to translate these or any other medical records to the ultimate finding or explain how such evidence demonstrates the frequency at which

Plaintiff's symptoms of impairment occurred.  *See Silkowski v. Comm'r of Soc. Sec.*, No. 18-CV-6727, 2020 WL 1493951, at *6 (W.D.N.Y. Mar. 27, 2020) (remanding where a doctor opined that the plaintiff needed "frequent opportunities" to alternate positions and the ALJ determined an appropriate RFC allowed for position changes every 60 minutes, without any explanation for the translation of "frequent" to "every 60 minutes"); *Annis v. Comm'r of Soc. Sec.*, No. 18-CV-1276, 2019 WL 6875231, at *10-11 (W.D.N.Y. Dec. 17, 2019) (finding the ALJ's determination that plaintiff would be off task five percent of the workday lacked sufficient support where the only medical opinion providing a specific time limitation stated that plaintiff would be off task at least 30% of the workday).  *But see Racine v. Berryhill*, No. 15-CV-0097A(F), 2017 WL 4570387, at *9-10 (W.D.N.Y. Sept. 12, 2017) (finding an ALJ's RFC determination that plaintiff was able to perform light work with the option of sitting or standing for the specific duration of every two to three hours was sufficiently supported by plaintiff's testimony and relevant medical records).  If the ALJ believed that an off-task determination was necessary and no such opinion was provided in the record, he should have obtained a medical opinion supporting such a limitation.  *Cheek v. Comm'r of Soc. Sec.*, No. 1:18-CV-01455 EAW, 2020 WL 2028258, at *5 (W.D.N.Y. Apr. 28, 2020).

This is especially true where, as here, the ALJ gave diminished weight to *all* the opinions he addressed.  Tr. 25.  While an ALJ is free to choose between medical opinions, he cannot substitute his own opinion for those of the medical experts.  *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  The off-task opinion here was not tied to any specific medical opinion evidence and no available opinion evidence regarding Plaintiff's specific limitations was weighed heavily by the ALJ.  Since no expert's opinion here was given controlling or substantial weight to support

the RFC, it is unclear where the precise limitations in the RFC came from.  *See Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019).

The ALJ's RFC assessment is not harmless error, because the vocational expert relied on the off-task time in concluding that Plaintiff was not disabled.  Tr. 55.  Indeed, the vocational expert testified that if a person was off-task 15% of the day, they would be precluded from working.  Tr. 59.  Yet, the ALJ relied on this testimony and the unsupported 10% off-task time determination in concluding that Plaintiff was not disabled.  *See* Tr. 27.  In other words, if Plaintiff in fact will be off task more than 10% of the workday, she may be considered disabled.  This case should therefore be remanded to the Commissioner to reevaluate Plaintiff's RFC and, if necessary, further develop the record to determine precisely how much of the workday Plaintiff would be off task.  *See Cosnyka*, 576 F. App'x at 46 (remanding where there was no basis for a particular off-task determination).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 11, is GRANTED, the Commissioner's motion for judgment on the pleadings, ECF No. 14, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated:  December 4, 2020
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court